**155 N. HIGH LIMITED, Appellee and Cross–Appellant,**

v.

**CINCINNATI INSURANCE COMPANY, Appellant and Cross–Appellee.**

[Cite as 155 N. High Ltd. v. Cincinnati Ins. Co. (1991), 75 Ohio App.3d 253.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1285.

Decided June 25, 1991.

254

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., James M. Wiles* and *James J. Brudny, Jr.,* for appellee and cross-appellant.

*Lane, Alton & Horst, Gregory D. Rankin* and *Karen K. Rosenberg,* for appellant and cross-appellee.

PEGGY BRYANT, Judge.

Defendant-appellant, Cincinnati Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, 155 North High Limited.

The facts as described herein are those found by the trial court referee. Defendant insured plaintiff's office building under a policy that provided coverage for property damage, with provision for business interruption and an endorsement for loss of rental value. When the office building was destroyed by fire on July 25, 1987, plaintiff claimed losses under the property damage and rental value provisions of the policy.

The property damage provisions of the policy specified that, subject to the policy limit, the amount of plaintiff's loss was to be determined by the replacement cost of the building if plaintiff chose to rebuild, or by the actual cash value of the building if plaintiff chose not to rebuild. Plaintiff notified defendant on August 11, 1987 that it would not rebuild, and claimed a loss measured by the actual cash value of the building. In mid-September 1987, defendant retained an expert to determine the replacement value of the building. Defendant did not retain an expert to determine the building's

actual cash value until November 16, 1987; approximately two weeks later, this expert determined that the building's value exceeded the property damage policy limit. On December 16, 1987, defendant paid to plaintiff the property damage policy limit of $1,030,000.

As to rental value, plaintiff claimed a $198,433 loss. By mid-November 1987, defendant made three payments to plaintiff totalling $92,000 under the policy's rental value insurance ("RVI") coverage, but the parties were unable to agree on the total amount plaintiff was entitled to recover. In particular, the parties disagreed both as to the rental income anticipated from the portions of the building which were vacant at the time of the fire, as well as the nature and amount of noncontinuing expenses that were to be subtracted from the rental value in determining plaintiff's actual loss.

In December 1987, defendant retained an accountant to assist in determining the amount of plaintiff's RVI claim. The accountant submitted an incomplete report in April 1988, and ultimately was unable to complete the report. Defendant therefore retained a second accountant in August 1988, who submitted a complete report in October 1988.

The second accountant raised for the first time the issue of whether depreciation was to be considered in determining plaintiff's RVI loss. With the assent of defendant's agent, Michael Gagnon, the second accountant's report treated depreciation as a noncontinuing expense, thereby significantly reducing the amount of plaintiff's RVI loss. Thus, fourteen months after the fire, defendant valued plaintiff's rental value loss at $47,751, approximately one fourth of the amount plaintiff claimed and $44,249 less than the amount defendant had previously advanced to plaintiff on the claim.

Despite defendant's determination that it had already paid plaintiff more than the amount of its RVI loss, defendant offered plaintiff an additional $18,000 to settle the claim. Plaintiff rejected the settlement offer, and brought suit against defendant alleging breach of contract, breach of the duty of good faith, and intentional tort. Defendant brought counterclaims alleging fraud and misrepresentation.

The case was tried to a referee, who found that defendant's delay in paying plaintiff on the property damage claim breached the insurance contract. The referee further found that defendant's delay in settling the RVI claim and its treatment of depreciation as a noncontinuing expense under the RVI provision breached both the insurance contract and defendant's duty of good faith, and that defendant's lack of good faith was sufficient to warrant punitive as well as compensatory damages. The trial court adopted the referee's report, granting judgment in favor of plaintiff.

Defendant appeals therefrom, assigning the following errors:

"I. The trial court erred by concluding, as a matter of law, that defendant-appellant breached its contract by omitting to timely perform a contractual obligation, to wit: the payment of policy limits for the loss of the building within a reasonable period of time.

"II. The trial court erred by finding that the actual loss sustained by plaintiff-appellee, for purposes of the rental value insurance endorsement, was $158,016.00.

"A. The trial court's finding that depreciation was not properly included in the calculation of the actual loss sustained by plaintiff-appellee was against the manifest weight of the evidence.

"B. The trial court's finding that depreciation was not in the category of 'charges and expenses which do not necessarily continue during the period of untenantability' was against the manifest weight of the evidence.

"III. The trial court erred by failing to conclude, as a matter of law, that depreciation was properly included in the calculation of the actual loss sustained by plaintiff-appellee, and that depreciation was an expense that did not necessarily continue after destruction of plaintiff-appellee's building.

"IV. The trial court erred by concluding, as a matter of law, that defendant-appellant breached the terms of the rental value insurance endorsement and thereby breached its insurance contract with plaintiff-appellee.

"V. The trial court erred by finding (a) that the insurance company breached its duty of good faith, justifying compensatory damages, and (b) that such conduct was sufficiently outrageous as to justify an award of punitive damages.

"A. The trial court's finding that defendant-appellant breached its duty of good faith was against the manifest weight of the evidence.

"B. The trial court erred in concluding that plaintiff-appellee sustained compensatory damages in the amount of $25,000 as a result of the alleged bad faith conduct of defendant-appellant.

"C. The trial court erred in concluding that the actions of defendant-appellant through its employees was outrageous beyond any notion of mere bad faith and justifies punitive damages.

"VI. The trial court committed numerous errors in the conduct of the trial which prejudiced defendant-appellant and deprived it of a fair trial.

"A. The trial court erred in permitting the testimony of James Wiles for the reason that Mr. Wiles was plaintiff-appellee's counsel and further he was not timely disclosed as a witness which prejudiced defendant-appellant.

"B.   The trial court erred in precluding defendant-appellant from cross-examining Ed Overmeyer regarding Cincinnati Insurance Company's claim regarding the adjustment of the claim and further erred in permitting plaintiff-appellee Charles J. Ruma to testify as to these matters.

"C.   The trial court erred in admitting the opinion testimony of Donald S. Malecki.

"VII.   The trial court erred by imposing the burden of proof upon defendant-appellant regarding the actual loss sustained by the insured.

"VIII.   The trial court erred in failing to grant judgment in favor of defendant-appellant on its counter-claim."

Plaintiff cross-appeals, assigning the following errors:

"I.   The trial court erred in adopting that portion of the referee's report which concluded as a matter of law that the amount of compensatory damages ($25,000) was adequate for the finding of bad faith against Cincinnati Insurance Company;  such amount being prima facie inadequate.

"II.   The trial court erred in adopting that portion of the referee's report which concluded as a matter of law that the amount of punitive damages ($100,000) was adequate for the actual malice, fraud, and insult committed by Cincinnati Insurance Company;  such amount being prima facie inadequate to punish and deter."

Defendant's first assignment of error asserts that the trial court erred in determining, as a matter of law, that defendant's delay in paying plaintiff's property damage claim breached an implied contract term that payment be made within a reasonable time.   Defendant first argues that the trial court improperly implied a contractual term fixing a reasonable time for payment, when the contract contained no express provision regarding time of payment. The law implies that performance take place within a reasonable time when a contract is silent as to the time for performance.   *Stewart v. Herron* (1907), 77 Ohio St. 130, 147, 82 N.E. 956, 959; see, also, *Clarke v. Hartley* (1982), 7 Ohio App.3d 147, 150, 7 OBR 190, 193–194, 454 N.E.2d 1322, 1326–1327. Thus, the trial court did not err in implying a reasonable time in the absence of a specific time for defendant's payment under the policy.

Defendant further argues that even if a contractual term fixing a reasonable time for payment properly may be implied, defendant's delay in paying plaintiff's property damage, as a matter of law, was not unreasonable; and, therefore, defendant did not breach its insurance contract with plaintiff.

The trial court referee found that "it became clear to everyone right away that plaintiff's office building, prior to the loss, had had a value far in excess of the $1,030,000 insurance policy limits," citing in support thereof defen-

dant's field adjuster's July 29, 1987 report that the replacement value of the building would be $2,000,000, and that the actual cash value was $2,000,000. Ultimately, defendant hired an expert who on December 2, 1987 reported an appraisal of $1,700,000 for plaintiff's property, with $1,100,000 allocated to the value of the destroyed building. While the appraisal results alone suggest that defendant's need to value the property as of the date of loss may have been justified, defendant's request for the appraisal itself appears unreasonable in light of its own adjuster's immediate valuation of the property to be well in excess of the policy limits.

However, even if defendant's need to ascertain the value of plaintiff's loss through appraisal is reasonable, we cannot say, as a matter of law, that defendant's efforts to ascertain the amount of the loss were reasonable. The trial court found that plaintiff notified defendant on August 11, 1987 that plaintiff would not rebuild, thereby fixing the actual cash value of the building as the method for valuing the loss. Nonetheless, defendant did not retain an expert to determine the actual cash value until three months later; and the trial court found no explanation for defendant's delay in ascertaining the amount of plaintiff's loss. Thus, we are unable to conclude that the trial court erred, as a matter of law, in finding that defendant's delay in paying plaintiff's claim was unreasonable and a breach of the insurance contract.

We therefore overrule defendant's first assignment of error.

We next consider defendant's second, third, fourth, and eighth assignments of error together, inasmuch as all of them challenge the trial court's interpretation of the RVI provision. Defendant asserts that the trial court erred (1) in concluding that depreciation was not a noncontinuing expense to be deducted in calculating plaintiff's RVI loss, (2) in failing to grant judgment on defendant's counterclaim that defendant overpaid plaintiff on the RVI claim, as depreciation should have been deducted in calculating plaintiff's loss, and (3) in finding that defendant breached the RVI provision of the contract as a matter of law.

Preliminarily, we note that defendant's second assignment of error challenges, as against the manifest weight of the evidence, the trial court's finding that depreciation was not properly included as a noncontinuing expense in calculating plaintiff's actual loss under the RVI endorsement, defendant arguing that its expert witness testimony overwhelmingly proved the contrary. We disagree with the premise to that argument. Specifically, to the extent the policy is unambiguous, the meaning of "actual loss" under the RVI endorsement, including whether depreciation is a noncontinuing expense to be excluded in calculating actual loss is a question of law to be determined from the language in the policy. *Olmstead v. Lumbermens Mut. Ins. Co.*

(1970), 22 Ohio St.2d 212, 215–217, 51 O.O.2d 285, 287–289, 259 N.E.2d 123, 126–127; *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. To the extent the policy language is ambiguous, the policy is construed against the insurance company. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. While the expert testimony rendered herein may have been pertinent to determining whether defendant breached its duty of good faith in resolving plaintiff's claim, and, in particular, in classifying depreciation as a noncontinuing expense under the policy, the expert testimony is not probative of the question of whether depreciation is a noncontinuing expense under the RVI endorsement at issue.

Addressing, then, the question of law raised in defendant's second, third, fourth, and eighth assignments of error, we note that the policy at issue contains separate provisions for business interruption and RVI coverage. As to business interruption, the policy provides that defendant shall be liable for "the actual loss sustained by the insured resulting directly from necessary interruption of business, but not exceeding the *reduction in earnings* less charges and expenses which do not necessarily continue during the interruption of business * * *." (Emphasis added.)

As to RVI, the policy provides that defendant shall be liable for " * * * the ACTUAL LOSS SUSTAINED by the Insured resulting directly from necessary untenantability, * * * but not exceeding the *reduction in Rental Value* less charges and expenses which do not necessarily continue during the period of untenantability * * *[.]" (Emphasis added.)

Under the policy, "rental value" is the sum of:

"A. The total anticipated gross rental income from tenant occupancy * * *, and

"B. The amount of all charges which are the legal obligations of the tenant(s) and which would otherwise be obligations of the Insured, and

"C. The fair rental value of any portion of said property which is occupied by the insured."

■ Defendant, pointing to the similarity of the language of the foregoing provisions, contends that the business interruption and RVI provisions provide virtually identical coverage. Plaintiff responds that (1) the separate RVI endorsement serves no purpose if it merely duplicates the coverage provided by the business interruption provision, and (2) to the extent that the two provisions provide the same coverage, the differences in policy language create an ambiguity which must be construed strictly against the insurer.

The two provisions differ primarily in the language used to define the insurable interest from which any noncontinuing charges or expenses are to be subtracted. Specifically, the business interruption provision defines "loss" in terms of reduction in earnings, whereas the RVI endorsement defines "loss" in terms of gross rental income plus the fair rental value of portions of the building occupied by the insured. If reasonable and logical meaning be afforded to these differences, *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 337, 94 N.E. 834, 839; *Gibbons–Grable Co. v. Gilbane Building Co.* (1986), 34 Ohio App.3d 170, 175, 517 N.E.2d 559, 564, then, despite the obvious language similarity in the "charges and expenses" language of the two provisions, the RVI endorsement provides coverage distinct from the business interruption insurance. Indeed, to conclude otherwise would suggest that defendant included the additional RVI endorsement but provided plaintiff with no greater protection than the business interruption provisions of the policy. Not only is such a conclusion illogical, but it defies common rules of contract interpretation. *Ford Motor Co. v. John L. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 161, 196 N.E.2d 335, 337 (each provision of a contract is generally deemed to be included for some purpose).

Specifically, to examine first the language differences, the business interruption coverage, by protecting earnings, protects plaintiff's profit on its leases. See, *e.g.*, *Fidelity–Phenix Fire Ins. Co. of New York v. Benedict Coal Corp.* (C.A.4, 1933), 64 F.2d 347, 353, certiorari denied (1933), 289 U.S. 762, 53 S.Ct. 795, 77 L.Ed. 1505. By contrast, the RVI endorsement is not so limited, as it even includes coverage for the cost plaintiff avoided by occupying space within its own building rather than renting space elsewhere; and plaintiff's occupancy of its building generates no profit on plaintiff's leases. Hence, the difference in coverage is apparent. Moreover, the RVI endorsement includes, as the most significant aspect of RVI coverage herein, plaintiff's gross income from its leases; it thereby protects not profits, as in business interruption coverage, but cash flow, which is defined generally as cash receipts less out-of-pocket charges and expenses. See Black's Law Dictionary (5 Ed.1979) 196 ("cash flow"), 416 ("disbursement"). Given the foregoing, we find the two endorsements provide different coverages.

■ In calculating plaintiff's actual loss, both the business interruption insurance and the RVI endorsement require that noncontinuing charges and expenses be subtracted from the insurable interest. Despite the difference in coverages under the two endorsements, defendant contends that the noncontinuing charges and expenses in both endorsements are identical as both are stated in identical language, and that because depreciation is a noncontinuing charge or expense for the purpose of determining business interruption loss,

*General Ins. Co. of America v. Pathfinder Petroleum Co.* (C.A.9, 1944), 145 F.2d 368, 369, certiorari denied (1945), 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406; *Fidelity–Phenix, supra,* depreciation also must be a noncontinuing charge or expense for the purpose of determining RVI loss. However, since the foregoing endorsements protect distinct insurable interests, the "charges and expenses" appropriately considered under each will differ. Depreciation is not necessarily a proper consideration in calculating RVI loss merely because depreciation is a factor in calculating business interruption loss. Rather, RVI and the "charges and expenses" pertinent to it must be considered independently in determining whether depreciation is a noncontinuing charge or expense in an RVI loss.

■ In the final analysis, depreciation is not an out-of-pocket charge or expense; rather, it is an accounting device that permits a taxpayer to recover his or her investment in property over the property's useful life. *Hibernia Natl. Bank in New Orleans v. United States* (C.A.5, 1984), 740 F.2d 382, 386; see, also, Section 167, Title 26, U.S. Code. Since depreciation is an accounting device not pertinent to determining cash flow, which RVI coverage protects, depreciation is not properly deducted as a noncontinuing expense in calculating actual loss under plaintiff's RVI endorsement.

Accordingly, we overrule defendants second, third, and eighth assignments of error. We also overrule defendant's fourth assignment of error, because defendant's improper inclusion of depreciation as a noncontinuing expense in calculating the RVI loss breached its contract with plaintiff as a matter of law.

■ Defendant's fifth assignment of error asserts that the trial court erred in finding that defendant breached its duty of good faith so as to justify an award of both compensatory and punitive damages. Defendant timely objected to the referee's findings of fact as to its breach of duty and requested preparation of a transcript for the trial court's review in ruling on these objections. However, the trial court overruled defendant's objections before preparation of the transcript was completed.

Pursuant to Civ.R. 53(E)(6), defendant bears the burden of providing the trial court with a transcript in support of its objections to the referee's findings of fact. *Eash v. Eash* (1984), 14 Ohio App.3d 298, 14 OBR 355, 471 N.E.2d 174. Defendant arguably met this burden by timely requesting preparation of the transcript. However, even if defendant failed to meet this burden, we may consider whether the trial court abused its discretion in adopting the referee's findings, given that defendant timely objected to these findings and timely requested a transcript. *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 63, 548 N.E.2d 287, 295.

Defendant's objection to the referee's findings was based upon the manifest weight of the evidence. Since resolution of a manifest weight question requires that the trial court review the transcript of proceedings, *Eash, supra,* 14 Ohio App.3d at 299, 14 OBR at 356, 471 N.E.2d at 176; *Reynolds v. CSX Transp., Inc.* (1989), 55 Ohio App.3d 19, 26, 561 N.E.2d 1047, 1054, the trial court abused its discretion by failing to consider the requested transcript before ruling on objections based upon the manifest weight of the evidence. See *Shull v. Shull* (Aug. 9, 1990), Greene App. No. 89–CA–89, unreported, 1990 WL 115983; *Eash, supra.* We sustain defendant's fifth assignment of error, and remand the cause to the trial court for determination of whether defendant breached its duty of good faith.

■ Defendant's sixth assignment of error raises several challenges to the referee's admission and exclusion of evidence. One of the matters assigned as error and raised in objections to the referee's report in the trial court was the admission of the testimony of James Wiles, attorney for plaintiff. When an attorney seeks to testify on behalf of a client without withdrawing from representation of the client at trial, the Supreme Court has directed the trial court to determine first whether the attorney's testimony is admissible, without regard to the Code of Professional Responsibility ("Code"). *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 260, 31 OBR 459, 462–463, 510 N.E.2d 379, 382. If the trial court finds that the testimony is admissible, the court then must determine whether any of the exceptions to DR 5–102 of the Code apply in order to prevent potential Code violations. *Id.* These exceptions to DR 5–102(B) permit an attorney to testify on behalf of a client only in the circumstances enumerated in DR 5–101(B). Specifically, DR 5–101(B)(4) permits an attorney to give substantive testimony as to disputed facts only if the attorney's withdrawal from conduct of the trial would work a substantial hardship on the client.

■ Defendant does not dispute that Wiles' testimony satisfied the first prong of *Mentor Lagoons, supra;* rather, defendant asserts that the referee, and hence the trial court, abused their discretion by finding that Wiles' testimony satisfied DR 5–101(B)(4). Resolution of an abuse of discretion question, like resolution of a manifest weight question, requires that the trial court review the transcript. The trial court abused its discretion in ruling on defendant's objection to the referee's report relative to the admission of Wiles' testimony without considering the transcript. Hence, we sustain defendant's sixth assignment of error as to the admission of Wiles' testimony, and remand the cause to allow the trial court to properly rule on defendant's objection and determine whether the referee abused his discretion in determining that Wiles' testimony satisfied DR 5–101(B)(4).

As to the remaining matters assigned as error in defendant's sixth assignment of error, to the extent defendant objects to the admission of the testimony of plaintiff's expert, any error is nonprejudicial as it relates to the issue of depreciation as a noncontinuing expense. Moreover, to the extent the testimony is pertinent to a determination of bad faith, we are unable to assess whether prejudicial error occurred, given our remand of the bad faith issue to the trial court. Similarly, to the extent the remaining evidentiary issues raised in defendant's sixth assignment of error are related to the trial court's determination of bad faith, we again are unable to determine that the matters at issue constitute prejudicial error. To that extent, then, defendant's sixth assignment of error is overruled.

■■■ Defendant's seventh assignment of error asserts that the trial court erred by imposing upon defendant the burden of proving plaintiff's actual loss, and that the trial court improperly disallowed defendant's inclusion of certain management and professional fees as noncontinuing expenses, thereby permitting plaintiff to recover these fees under the RVI provision.

■■■ The insured bears the burden of establishing the amount of its loss. *Strip v. Buckeye Union Ins. Co.* (June 26, 1973), Franklin App. No. 73AP–56, unreported. However, the trial court's failure to include the challenged fees as noncontinuing expenses did not improperly shift the burden of proof to defendant but, rather, indicates that the trial court was not persuaded by defendant's attempt to refute plaintiff's claim with respect to these fees. Defendant's seventh assignment of error is overruled.

Plaintiff's first and second cross-assignments of error both challenge the adequacy of the trial court's award of damages for defendant's bad faith. Having determined that the trial court abused its discretion by prematurely adopting the referee's findings of fact regarding defendant's breach of the duty of good faith, any error in the adequacy of the trial court's award of damages for bad faith is not prejudicial, as the trial court necessarily will redetermine the amount of damages based on the nature of the breach of duty of good faith, if any, the trial court may find. *Gray v. General Motors Corp.* (1977), 52 Ohio App.2d 348, 359, 6 O.O.3d 396, 402–403, 370 N.E.2d 747, 754–755. Consequently, we overrule both of plaintiff's cross-assignments of error.

Having sustained defendant's fifth assignment of error and that portion of defendant's sixth assignment of error relating to the admission of Wiles' testimony, and having overruled defendant's remaining assignments of error and plaintiff's cross-assignments of error, we reverse the judgment of the trial court as to plaintiff's claim for breach of the duty of good faith under the RVI provision, affirm the judgment of the trial court except as noted herein as

to the foregoing claim, and remand the cause for further proceedings consistent herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STRAUSBAUGH and JOHN C. YOUNG, JJ., concur.