(No. 73127.—

THEODORE GREVAS, Appellant, v. UNITED STATES
FIDELITY AND GUARANTY COMPANY, Appellee.

*Opinion filed October 15, 1992.*

Robert A. Eagle, of Eagle & Eagle, of Rock Island, for appellant.

John P. Harris, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiff, Theodore Grevas, filed a complaint in the circuit court of Rock Island County against the defendant, United States Fidelity and Guaranty Company. Plaintiff and defendant had entered into an insurance contract insuring plaintiff's building, which was used for commercial renting. The insurance contract contained a business interruption clause. The plaintiff was to receive the actual business loss minus charges and expenses which would not necessarily continue during the interruption of business or during the untenantability of the premises. After fire destroyed plaintiff's building, defendant made a settlement offer which included among the noncontinuing expenses a deduction for depreciation. Plaintiff sought a ruling on the interpretation of the business interruption provision.

The circuit court held that depreciation was not a noncontinuing expense and should not be deducted from plaintiff's recovery. The appellate court reversed (223 Ill. App. 3d 527) and plaintiff petitioned this court for leave

to appeal (134 Ill. 2d R. 315). We allowed the petition and now reverse.

Plaintiff's building, used for commercial renting, burned in April 1989, resulting in the total loss of the building. Defendant offered to settle the plaintiff's claim by paying a rental loss of $57,999.76, less noncontinuing expenses, including an item for depreciation in the sum of $14,841. The offer of settlement, set forth on page five of the statement of loss from defendant's adjuster, stated:

| "Total Prevented Gross Rents | | 57,999.76 |
|---|---|---|
| Less Non-Continuing Expenses | | |
| Water | 457.00 | |
| Gas & Electric | 560.00 | |
| Repairs and Maintenance | 4,653.00 | |
| Legal Fees | 1,262.00 | |
| Refuse Disposal | 467.00 | |
| Sign Expense | 53.00 | |
| Cleaning Expense | 14.00 | |
| Depreciation | 14,841.00 | |
| | 22,307.00 | 22,307.00 |
| | | 35,692.76" |

On appeal, the issue is whether the depreciation of $14,841 was properly deducted from the gross rental as a noncontinuing expense pursuant to coverage C of the contractual agreement. The pertinent provisions of the insurance contract state:

"Coverage C: Loss of Income

This policy covers the actual business loss sustained by the insured and the expenses necessarily incurred ***. The actual business loss sustained by the insured shall not exceed ***.

1. the reduction in gross earnings, less charges and expenses which do not necessarily continue during the interruption of business; and

2. the reduction in rents, less charges and expenses which do not necessarily continue during the period of untenantability.

The actual business loss sustained shall not include charges and expenses which do not necessarily continue during the interruption of business or during the untenantability of the premises."

Plaintiff contends that depreciation is a tax credit, not an expense. Depreciation should be treated as a tax credit, according to plaintiff, rather than an expense because no funds are expended which reduce the amount of rents actually received. He argues the intent of the insurance contract was to protect the insured from lost rents which would have been earned had not the loss taken place, and the only expenses which should be included under the terms of the contact are those which actually reduce the amount of rent received.

Defendant asserts that depreciation falls under the contract because it is an expense or charge which does not necessarily continue during the period of the loss.

It is well established that all parts of an insurance contract are to be considered together in order to ascertain the meaning and intent of the parties. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54.) If the language of a policy is clear and unambiguous and the meaning of the contract can be discerned, a court will give effect to that meaning. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1.) However, an insurance contract should be construed liberally in favor of the insured and strictly against the insurer. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330.

We begin our inquiry by first determining which portion of the insurance agreement controls the issue before us. Coverage C, section 1, protects the reduction or loss of earnings, while section 2 protects the reduction or

loss of rents. Gross earnings may be defined as all income from whatever source derived. (I.R.C. §61(a) (1992).) Rents, however, are limited to the consideration derived solely from the use of property. (Black's Law Dictionary 1166 (5th ed. 1979).) As such, section 2 is the more specific of the two provisions.

The business loss to plaintiff concerned the lost rents from a commercial rental building, and is the only loss plaintiff seeks to recover under coverage C. Thus, plaintiff may recover under either clause: section 1 as a source of gross earnings, or section 2 as rents. Courts and legal scholars have long recognized that, where both a general and a specific provision in a contract address the same subject, the more specific clause controls. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395; *Steffen v. Paulus* (1984), 125 Ill. App. 3d 356; *Olson v. Rossetter* (1947), 330 Ill. App. 304, *aff'd* (1948), 399 Ill. 232; see also 3 A. Corbin, Corbin on Contracts §547 (1960).) Section 2, which addresses reduction in rent, is more specific than section 1, which addresses any loss of earnings. We conclude that section 2 of coverage C controls the outcome of this case. Thus, the issue we must determine is whether defendant correctly deducted $14,841 for depreciation from the gross rents pursuant to coverage C, section 2, of the insurance contract.

Under the circumstances of this case, there is no question that depreciation did not continue during the period of untenantability. The insured property was destroyed, such that depreciation could no longer be subtracted from the value of the building. (*Fidelity-Phenix Fire Insurance Co. v. Benedict Coal Corp.* (4th Cir. 1933), 64 F.2d 347.) In fact, plaintiff admitted as much in his response to defendant's post-trial motion, stating he had not taken depreciation during the period in which he received no rents.

The circuit court found that the contract was ambiguous with respect to whether depreciation should be treated as a noncontinuing expense. The court stated that depreciation as a noncontinuing expense should have been specifically included within the contract if the insurer intended it to be deducted. The court further found it improbable that depreciation was an intended part of the contract where inconsistent results would attach depending solely on whether the insured took depreciation on his tax return. The court stated it had a "difficult time believing that it was the intention of the insured in purchasing this coverage that *** his right to recover for business interruption would be less where the asset is totally destroyed than it would be where it's only partially damaged."

The circuit court's decision rested upon an unwillingness to rely upon the insurer's interpretation of what a noncontinuing expense is within the meaning of the contract, due to what the court determined to be the inconsistent results which might follow that interpretation. Defendant argued that depreciation, in the context of having a building completely destroyed by fire, is a noncontinuing charge or expense. Because this "charge or expense" for depreciation could not continue once the building was destroyed, defendant argued, the amount plaintiff would have claimed as depreciation for the period of interruption should have been deducted from his recovery. This deduction would thus reduce plaintiff's recovery by the amount of the depreciation for the period of interruption, just as the recovery would be reduced by an amount for utility or maintenance bills. Since these "charges or expenses" did not continue during the period when the property generated no income, they were, according to defendant, noncontinuing expenses under the terms of the contract.

The circuit court's reluctance to subtract depreciation stemmed from the fact that, had the building not been destroyed but merely damaged, there would have been no reduction for depreciation from the recovery since plaintiff might still have claimed depreciation on his tax return. As such, defendant could not subtract the depreciation amount from the recovery since it would have been a continuing expense. The end result, according to the circuit court's reasoning, would have been that plaintiff would have received less of a recovery under the business interruption policy for a totally destroyed building than for a building which remained intact, though possibly damaged. The circuit court found it improbable that plaintiff intended to receive less on the policy for a totally destroyed building than for one not destroyed. Thus, the circuit court found the contract to be ambiguous and treated depreciation as a tax credit rather than a charge or expense.

The appellate court reversed the decision of the circuit court. Citing *Cohen Furniture Co. v. St. Paul Insurance Co.* (1991), 214 Ill. App. 3d 408, the appellate court concluded it had already dealt with the issue of whether depreciation is a noncontinuing expense. Like the case at bar, *Cohen* involved a building which was destroyed by fire. *Cohen*, however, concerned a policy which addressed merely the loss of earnings. The policy there stated:

> "*Loss of Earnings and Extra Expense*
> We'll cover your actual loss of earnings and extra expenses incurred because of necessary or potential interruption of business caused by covered direct damage to the building or business contents at an insured location."
> See *Cohen Furniture*, 214 Ill. App. 3d at 415.

The cases cited by *Cohen* considered similar policies. In *Fidelity-Phenix Fire Insurance Co. v. Benedict Coal Corp.* (4th Cir. 1933), 64 F.2d 347, the court construed

provisions of a use and occupancy insurance policy, a precursor to business interruption insurance. The policy there covered the business interruption of a coal mine operator. The policy covered "[n]et profits on the business" and "[s]uch fixed charges and expenses as must necessarily continue." (*Fidelity-Phenix*, 64 F.2d at 350.) In *American Insurance Co. v. Pickering Lumber Corp.* (N.D. Cal. 1949), 87 F. Supp. 512, under a policy insuring against actual loss sustained by reason of suspension of business caused by fire, the policy covered net profits and fixed charges and expenses. Also, in *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.* (3d Cir. 1980), 632 F.2d 1068, 1077, the business interruption policy covered the "reduction in earnings less charges and expenses which do not necessarily continue during the interruption." Thus, although *Cohen* and the authorities it cited all considered depreciation under a business interruption insurance policy, they did so in the context of policies covering loss of earnings.

The policy at issue in the case at bar, while containing a loss of earnings provision, contains an additional provision concerning loss of rents. Plaintiff points to an Ohio appellate court case which addresses this type of coverage.

In *155 North High Ltd. v. Cincinnati Insurance Co.* (1991), 75 Ohio App. 3d 253, 599 N.E.2d 352, an Ohio appellate court considered the effect of depreciation on a policy similar to that in the case at bar where the insured's building had been destroyed. The policy there stated the insurer would be liable for:

> " '[t]he actual loss sustained by the insured resulting directly from necessary interruption of business, but not exceeding the reduction in earnings less. charges and expenses which do not necessarily continue during the interruption of business ***.' " (Emphasis omitted.) (*155 North High Ltd.*, 75 Ohio App. 3d at 260, 599 N.E.2d at 356.)

The policy had an additional provision relating to rental value insurance, which made the insurer liable for:

> " 'the ACTUAL LOSS SUSTAINED by the Insured resulting directly from necessary untenantability, *** but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue during the period of untenantability ***.' " (Emphasis omitted.) *155 North High Ltd.*, 75 Ohio App. 3d at 260, 599 N.E.2d at 357.

The insurer attempted to include depreciation as a deduction from the insured's recovery as an expense that did not necessarily continue under the rental value provision. The insurer argued that, considering the similar language used in the provisions, the coverages were virtually identical, hence the deduction for depreciation, proper under the business loss (loss of earnings) provision, was also proper under the rental value (loss of rents) provision.

The court in *155 North High Ltd.* first noted that the rental value provision provided different coverage than the business loss coverage, for to include the rental value coverage without providing any different protection would be illogical and would defy common rules of contract interpretation. (Accord *Western & Southern Indemnity Co. v. Industrial Comm'n* (1937), 366 Ill. 240.) Furthermore, the court noted that, inasmuch as the two provisions provided different coverages, the charges and expenses considered under each would differ. The court then distinguished the two coverages. The business loss provision protected the insured's *profits* on its leases. (*155 North High Ltd.*, slip op. at 5, citing *Fidelity-Phenix Fire Insurance Co. v. Benedict Coal Corp.* (4th Cir. 1933), 64 F.2d 347, 353.) The rental value provision, however, was based upon gross *income* from its leases. Thus, the Ohio court concluded, the rental value coverage protected cash flow, defined as cash receipts less out-of-pocket charges and expenses. (*155 North High*

*Ltd.*, slip op. at 5, citing Black's Law Dictionary 196 (5th ed. 1979).) Furthermore, the court found depreciation to be not an out-of-pocket expense, but rather an "accounting device." (*155 North High Ltd.*, slip op. at 6, citing *Hibernia National Bank v. United States* (5th Cir. 1984), 740 F.2d 382, 386.) The court did not question whether depreciation might be proper under a provision addressing business loss. However, depreciation did not affect cash flow, and thus it could not be deducted under the rental value (loss in rents) provision in the policy.

We agree with this analysis. Gross income, or earnings, means all income from whatever source derived. (I.R.C. §61(a) (1992).) Rents, however, are limited to the consideration generated from the property. (Black's Law Dictionary 1166 (5th ed. 1979).) Cash flow is "[t]he cash generated from the property. It is different than net income; cash flow looks to the amount of cash left after all payments are made, whether they are tax deductible or not. Cash receipts minus disbursements from a given asset, or group of assets, for a given period" constitute cash flow (Black's Law Dictionary 196 (5th ed. 1979)). Coverage C, section 2, addresses rents alone, which means the cash generated from the property. As such, we conclude the provision protects the cash flow of the business.

The policy in the case at bar contains coverages similar to those in *155 North High Ltd.* Whereas section 1 of coverage C addresses gross earnings (profits), section 2 addresses rents (cash flow). Depreciation does not affect cash flow, and thus should not be deducted from plaintiff's recovery.

Defendant asserts, however, that depreciation is a noncontinuing charge or expense. Again we agree with the analysis of *155 North High Ltd.* Noncontinuing charges and expenses under different policy provisions may differ. While we do not address whether deprecia-

tion is a charge or expense under a loss of earnings provision, under the loss of rents provision it is not, for depreciation has no effect on cash flow.

The nature of depreciation was discussed by the United States Supreme Court in *Massey Motors, Inc. v. United States* (1960), 364 U.S. 92, 4 L. Ed. 2d 1592, 80 S. Ct. 1411. " 'Depreciation allowances are the method by which the capital invested in an asset is recovered tax-free over the years it is used in a business.' " (*Massey*, 364 U.S. at 102-03, 4 L. Ed. 2d at 1599, 80 S. Ct. at 1417, quoting H.R. Rep. No. 1337, 83d Cong., 2d Sess. 22.) " 'The end and purpose of it all [depreciation accounting] is to approximate and reflect the financial consequences to the taxpayer of the subtle effects of time and use on the value of his capital assets.' " (*Massey*, 364 U.S. at 104, 4 L. Ed. 2d at 1600, 80 S. Ct. at 1418, quoting *Detroit Edison Co. v. Commissioner of Internal Revenue* (1943), 319 U.S. 98, 101, 87 L. Ed. 1286, 1289, 63 S. Ct. 902, 904.) Thus, depreciation does not involve expenditures which reduce the cash flow of a business. Rather, it is an accounting factor, for tax purposes, by which the economic loss due to wear and tear of the original investment is alleviated. No sums are set aside in anticipation of maintaining the integrity of the investment; thus it would be difficult to characterize depreciation as an expense affecting the cash flow of a business.

Depreciation is not specifically mentioned in the insurance contract, and every other expense deducted from plaintiff's recovery is an out-of-pocket expense. Additionally, there is no indication here that depreciation is anything other than an accounting device for tax purposes. While the cases cited by the appellate court here, and in *Cohen*, do, to some measure, deal with business interruption insurance, they do so only with respect to loss of earnings. None addresses rental loss as consid-

ered in the Ohio appellate court case cited by plaintiff, which more closely parallels the policy at issue here.

We believe the appellate court misapprehended the nature of depreciation under coverage C, section 2, in its decision. We agree with plaintiff that, under the loss of rents provision in the contract, depreciation is solely a tax device which is not a noncontinuing charge or expense. Thus, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*