**VERMONT MUTUAL INSURANCE CO., Plaintiff,**

v.

**Mary E. PETIT and Frank Petit, Trustees of 93A Hillside Street Nominee Trust, et al., Defendants.**

**Civil Action No. 06–11212–JLT.**

United States District Court,
D. Massachusetts.

May 11, 2009.

Peter C. Kober, Litchfield Cavo LLP, Lynnfield, MA, for Plaintiff.

Richard E. Heifetz, William P. McGovern, Jr., William P. Rose, Tucker, Heifetz & Saltzman, LLP, John F. Rossi, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiff Vermont Mutual Insurance Company ("Vermont Mutual") brings this declaratory judgment action to determine its obligations with respect to an insurance policy ("the Policy") issued to Defendants Mary and Frank Petit ("the Petits"). This insurance coverage dispute stems from a March 3, 2006 fire ("the Fire"), which caused significant damage to the Petits' rental property at 93A Hillside Street, Boston, Massachusetts ("the Property"). This court described the relevant facts in its July 1, 2008 Memorandum allowing, in relevant part, summary judgment in favor of the Petits on the issue of Vermont Mutual's coverage liability.[1]

Presently at issue is the amount of damages the Petits are entitled to recover under the Policy. This court held a Bench Trial on the issue on December 15, 2008 and January 15, 2009. Vermont Mutual and the Petits have stipulated to the amount of recoverable property damages[2] and the applicable prejudgment interest rate,[3] leaving calculation of lost rental income for this court's determination. For the following reasons, this court concludes that the Petits are entitled to recover

---

**1.** *See* Mem. 2–6, July 1, 2008.

**2.** *See* Trial Tr. 5:14–6:3, Dec. 15, 2008 ("Tr. 1").

**3.** *See id.* 6:19–7:3.

$194,832 in lost rental income, subject to the $73,000 limit of liability.[4]

## II. *Findings of Fact*

The Policy provides in relevant part:

If a loss to [the Property] ... makes that part of [the Property] rented to others or held for rental by [the Petits] unfit for its normal use, [Vermont Mutual] cover[s] its:

Fair Rental Value, meaning the fair rental value of that part of [the Property] rented to others or held for rental by [the Petits] less any expenses that do not continue while that part of [the Property] rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of [the Property] rented or held for rental.[5]

In 2004, the Petits collected $59,545 in rent.[6] In 2005, the Petits collected $58,800 in rent.[7] Between 2004 and 2005, the average amount of rent that the Petits collected per month was $4,931,[8] or $59,172 over a twelve-month period.[9] At the time of the Fire, the three rental agreements in effect at the Property entitled the Petits to collect payments totaling $5,850 per month,[10] or $70,200 over a twelve-month period.[11]

The Petits' tax returns listed numerous expenses relevant to owning and operating the Property, including expenses for auto and travel, cleaning and maintenance, insurance, management fees, mortgage interest, repairs, taxes, utilities, "other," and depreciation.[12] Of these expenses, only auto and travel, cleaning and maintenance, management fees, repairs, utilities, "other," and depreciation did not continue after the Fire.[13] For 2004 and 2005, the only full years for which the Petits owned the Property,[14] the monthly average amounts for these expenses were as follows: auto and travel, $47; cleaning and maintenance, $63; management fees, $164; repairs, $10; utilities, $147; "other," $7; and depreciation, $1,828.[15] These averages total $2,266 per month, or $27,192 over a twelve-month period.[16] Omitting depreciation, these averages total $438 per month, or $5,256 over a twelve-month period.[17]

A reasonable amount of time to repair the damages at the Property would be between eight [18] and ten [19] months.

4. The $73,000 limit of liability is reached by adding the limit of liability for "Fair Rental Value" coverage ($23,0000) and 10% of the limit of liability for "Dwelling" coverage ($50,000). *See* Trial Ex. 5, Declarations 1 & Policy 2.

5. *Id.* Policy 2. Vermont Mutual and the Petits do not dispute that the Property has been unfit to live in since the Fire.

6. *See* Trial Ex. 7, Schedule 7.

7. *See id.*

8. *See id.* Schedule 6.

9. *See id.* Schedule 5.

10. Trial Tr. 20:2–8, Jan. 15, 2009 ("Tr. 2").

11. *See* Trial Ex. 7, Schedule 5.

12. *See* Trial Exs. 1–3.

13. Tr. 1 at 30:9–31:21.

14. The Petits purchased the Property in the fall of 2003, and the Fire occurred on March 3, 2006. Mem. 2, 4, July 1, 2008.

15. *See* Trial Ex. 7, Schedule 4.

16. *See id.* Schedule 2E.

17. *See id.*

18. Chandler Aff. 3, Apr. 28, 2009.

19. Petits' Restoration Period Br. Ex. 3 at 1.

## III. Conclusions of Law

■ Under Massachusetts law, "insurance-contract interpretations pose legal issues for resolution by the court."[20] The insured has the initial burden of proof in establishing "that the loss is within the description of the risks covered."[21] After the insured demonstrates that a claim falls within the coverage terms, the burden shifts to the insurer to establish whether an exclusion applies.[22] Insurance coverage exclusions are to be strictly construed.[23]

■ A court must enforce an insurance contract according to its plain language, unless that language is ambiguous.[24] A contract term is ambiguous if "its language is 'reasonably prone to different interpretations' or 'susceptible to differing, but nonetheless plausible, constructions.'"[25] The court is to read the insurance contract "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed,"[26] construing the insurance contract terms "in their usual and ordinary sense" and "in the context of the Policy as a whole."[27] The court must resolve any contract ambiguity against the insurer.[28]

Vermont Mutual and the Petits disagree over three issues relevant to the Petits' recovery of lost rental income: (1) what constitutes the "fair rental value" of the Property; (2) whether auto and travel and depreciation qualify as "discontinuing expenses"; and (3) the duration of "the shortest time required to repair or replace" the Property.

### A. Fair Rental Value

■ The Policy provides coverage for "the fair rental value" of the Property.[29] Vermont Mutual asks this court to compute the fair rental value based on the amount of rental income the Petits actually collected and reported on their tax returns for 2004 and 2005.[30] The Petits base their computation of the fair rental value on the rental contracts in effect at the time of the Fire.

Vermont Mutual's method for computing fair rental value suffers from several deficiencies. First, the rent that the Petits collected in 2004 and 2005 does not represent what the Petits could have charged in 2006 and onward. In addition, the Petits' history of late or otherwise imperfect rent collection spans a period of only two full years, failing to establish a predictive pattern. Finally, Vermont Mutual has not presented any evidence demonstrating that the Petits would have failed to collect the full amount specified in the leases for the time following 2006.

The Petits' approach is the more accurate means of calculating the fair rental

20. *Utica Mut. Ins. Co. v. Weathermark Invs., Inc.*, 292 F.3d 77, 80 (1st Cir.2002).

21. *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F.Supp.2d 77, 134 (D.Mass.1999) (quotations and citations omitted).

22. *Id.*

23. *Id.*

24. *Utica Mut. Ins. Co.*, 292 F.3d at 80.

25. *Lanier Prof'l Servs., Inc. v. Ricci*, 192 F.3d 1, 4 (1st Cir.1999) (quoting *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir.1998)).

26. *Allmerica Fin. Corp. v. Certain Underwriters*, 449 Mass. 621, 871 N.E.2d 418, 425 (2007) (quotation and citations omitted).

27. *Strange v. Genesis Ins. Co.*, 536 F.Supp.2d 71, 74 (D.Mass.2008) (quotation and citation omitted).

28. *Utica Mut. Ins. Co.*, 292 F.3d at 80.

29. Policy 2.

30. *See* Tr. 1 at 34:5–16.

value.[31] In this context, "fair rental value" most closely corresponds to "fair market value," the "highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market."[32] The rental contracts in effect at the time of the Fire provide the best evidence of the highest price a hypothetical renter would have been willing to pay the Petits to rent a unit at the Property. Accordingly, this court concludes that the fair rental value of the Property is the amount that the Petits were entitled to collect based on the rental contracts in effect at the time of the Fire, or $5,850 per month.

## B. *Discontinuing Expenses*

■ To compute lost rental income, the "fair rental value" is decreased by "any expenses that do not continue while that part of [the Property] rented or held for rental is not fit to live in."[33] Given that the Petits have not provided any evidence to support their expense calculations,[34] this court adopts Vermont Mutual's computations, which is based on the Petits' average monthly expenses for 2004 and 2005 as reported in their tax returns. Vermont Mutual and the Petits agree that cleaning and maintenance, management fees, repairs, utilities, and "other" all constitute discontinuing expenses, but disagree with respect to auto and travel and depreciation.

### 1. *Auto and Travel*

■ The Petits claim that their auto and travel expenses continued after the Fire, but they have not produced any evidence supporting this assertion.[35] Even if the Petits had continued to incur auto and travel expenses, they could not have qualified as "continuing" expenses associated with leasing the Property because the Property was unfit to live in after the Fire. Any auto and travel expenses that the Petits may have incurred after the Fire would have been "new" expenses pertaining to some activity other than leasing the Property. The language of the Policy clearly applies to expenses that "do not continue,"[36] not "new" expenses. The pre-Fire auto and travel expenses, therefore, qualify as discontinuing expenses.

### 2. *Depreciation*

■ Vermont Mutual contends that depreciation is a discontinuing expense, reasoning that the Petits' recovery for lost rental income "should only allow them to become 'whole'" and that depreciation "is an expense that affects income, as reflected in the Petits' tax returns."[37] The Petits' position is that depreciation has already been "accelerated," as "evidenced by the fact that depreciation is listed as a

**31.** *See, e.g., Dale v. H.B. Smith Co.,* 136 F.3d 843, 850 (1st Cir.1998) (upholding the computation of a tenant at sufferance's liability for "reasonable worth" of occupancy that was based on the rent established in a sublease); *Ghoti Estates v. Freda's Capri Rest.,* 332 Mass. 17, 123 N.E.2d 232, 238 (1954) ("[T]he amount of rent reserved in the lease was properly used in evidence to prove the amount due.").

**32.** *Comm'r of Corps. & Tax. v. Worcester County Trust Co.,* 305 Mass. 460, 26 N.E.2d 305, 307 (1940); *Black's Law Dictionary* 1587 (8th ed. 2004) ("The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arms-length transaction.").

**33.** Policy 2.

**34.** *See* Petits' Proposed Findings of Fact ¶¶ 27–35. 6

**35.** *See id.*

**36.** Policy 2.

**37.** Vermont Mutual's Depreciation Br. 2.

deduction in the property damage stipulation," and that "[i]t does not have an impact on cash flow on a month to month basis." [38]

The purpose of the lost rental income Policy provision is to place the Petits in the same position as they would have been in had the Fire not occurred. To do this, the Policy allows recovery for the rental income that the Petits would have earned in leasing the units, less any expenses that the Petits would have incurred. The discontinuing expenses on which Vermont Mutual and the Petits agree are those that were "out-of-pocket," "cash" expenses. Depreciation is not a cash expense,[39] but "an accounting function to spread the cost of an asset over its useful life." [40]

Courts in other jurisdictions that have considered whether depreciation constitutes a discontinuing expense have answered in the negative,[41] and this court agrees. The Policy is intended to reimburse the Petits for the gross income that they would have earned by leasing the units in the Property, or "cash flow." [42] Cash flow is "[c]ash receipts minus cash disbursements for a given period." [43] Vermont Mutual's own expert agreed that depreciation "would not impact [the Petits'] cash flow on a month-to-month basis." [44]

Moreover, because depreciation is an accounting factor for tax purposes, including it as a discontinuing expense would lead to "inconsistent results ... depending solely on whether the insured took depreciation on his tax return." [45] Finally, depreciation has effectively been "accelerated" in this case because Vermont Mutual and the Petits deducted it from the Petits' stipulated-to property damages recovery.[46] Deducting depreciation from the Petits' lost rental income recovery would amount to double-counting.

Accordingly, this court adopts a discontinuing expenses calculation of $438 per month, which includes expenses for auto and travel, cleaning and maintenance, management fees, repairs, utilities, and "other," but not depreciation. The amount of recoverable lost rental income, taking the fair rental value of the Property ($5,850 per month) and subtracting discontinuing expenses ($438 per month), totals $5,412 per month.

## C. Period of Restoration

 The Policy entitles the Petits to recover lost rental income for "the shortest time required to repair or re-

---

38. Petits' Depreciation Br. 4–5.

39. Tr. 2 at 39:2–7.

40. *Id.* 39:9–10.

41. *See Grevas v. U.S. Fid. & Guar. Co.*, 152 Ill.2d 407, 178 Ill.Dec. 419, 604 N.E.2d 942, 947 (1992) ("[D]epreciation is solely a tax device which is not a noncontinuing charge or expense."); *155 N. High Ltd. v. Cincinnati Ins. Co.*, 75 Ohio App.3d 253, 599 N.E.2d 352, 358 (1991) ("Since depreciation is an accounting device not pertinent to determining cash flow, ... depreciation is not properly deducted as a noncontinuing expense ...."); *cf. Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Freightways, Inc.*, No. 07 CV 2149,

2009 WL 595694, at *6 (N.D.Ill. Mar. 9, 2009) ("[D]epreciation is not an out-of-pocket expense but an accounting figure used for tax purposes that does not affect cash flow.").

42. *See Grevas*, 178 Ill.Dec. 419, 604 N.E.2d at 946–47.

43. *Black's Law Dictionary, supra* note 32, at 230.

44. Tr. 2 at 39:6–7.

45. *Grevas*, 178 Ill.Dec. 419, 604 N.E.2d at 945.

46. *See* Stipulation 2, Jan. 23, 2008.

place" the Property.[47] Under insurance policies providing coverage for business interruption or lost rental income, the insurer is liable "for the duration of the reasonable period of time needed for [the insured] to reenter business plus any delay attributable to [the insurer's] failure to perform its duties under the policy."[48] The period of restoration is a "theoretical replacement time," which a court may extend to account for an insurer's "failure to adjust [a] loss within a reasonable time."[49] A reasonable extension in the adjustment period may include foreseeable delays in negotiating losses.[50]

■ Vermont Mutual has presented evidence demonstrating that the period of time needed to repair the Property would amount to eight months, and the Petits' evidence supports a repair period of ten months. Given that the reconstruction period is a theoretical estimate not capable of absolute precision, this court settles on nine months as the "shortest" amount of time required to repair the Property.

Vermont Mutual agrees that this court should extend the compensable restoration period to include the time "necessary and appropriate to complete the estimates prior to beginning construction," but limits this period to "approximately 3–4 months."[51] The Petits, on the other hand, argue that this court should extend the restoration period to "include the entirety of this litigation if payment is not made beforehand by Vermont Mutual."[52] The justification for such an extension is that the typical insured cannot begin reconstruction until the insured receives payment from the insurer. Adjustment of the claim, therefore, is "required" before an insured can begin to "repair or replace."

When writing the Policy, and the lost rental income provision in particular, Vermont Mutual could have anticipated that some adjustment periods would include delays resulting from negotiations and contentious litigation.[53] In this case, resolution of Vermont Mutual's coverage liability began soon after the March 2006 Fire and continued until this court decided liability in favor of the Petits in July 2008, an approximate time period of twenty-seven months. Because the "shortest time required to repair or replace" includes both the actual reconstruction period and adjustment delays,[54] the Petits may recover lost rental income for a nine-month reconstruction period and a twenty-seven-month adjustment and settlement period, for a total of thirty-six months.

**47.** Policy 2.

**48.** *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 843 F.2d 1140, 1143 (8th Cir.1988); *see also* 12 Lee R. Russ, *Couch on Insurance* § 185:7 (3d ed. 2008).

**49.** *Bard's Apparel Mfg., Inc. v. Bituminous Fire and Marine Ins. Co.*, 849 F.2d 245, 251–52 (6th Cir.1988); *see also United Land Investors, Inc. v. N. Ins. Co. of Am.*, 476 So.2d 432, 437–38 (La.Ct.App.1985) (upholding coverage for the "actual length of the business interruption" because "until plaintiff and the insurance company had arrived at the amount which was paid, plaintiff was in no position to contract for or begin the repairs to the building").

**50.** *See Eureka–Sec. Fire & Marine Ins. Co. v. Simon,* 1 Ariz.App. 274, 401 P.2d 759, 763–64 (1965) (affirming an extension of the restoration period given that a "delay in negotiating . . . was a reasonable delay to be anticipated by the defendant insurance company in writing its policy").

**51.** Vermont Mutual's Restoration Period Br. 2.

**52.** Petits' Restoration Period Br. 5.

**53.** *See Eureka,* 401 P.2d at 763–64.

**54.** *See Hampton Foods,* 843 F.2d at 1143.

IV. *Conclusion*

For the reasons stated above, the Petits are entitled to recover thirty-six months of lost rental income at a rate of $5,412 per month, for a total of $194,832, subject to the $73,000 limit of liability.

AN ORDER HAS ISSUED.

### *ORDER*

For the reasons set forth in the accompanying Memorandum, this court hereby orders that:

1. The Petits are entitled to recover thirty-six months of lost rental income at a rate of $5,412 per month, for a total of $194,832, subject to the $73,000 limit of liability.

2. The Evidentiary Hearing scheduled for May 18, 2009 at 10:00 a.m. shall be a Pretrial Conference.

IT IS SO ORDERED.