This is an appeal from a judgment entered by the Pike County Common Pleas Court dismissing a complain filed by Jeffrey Chaney, plaintiff below and appellant herein, and granting the first claim for relief in a counterclaim filed by appellant's cousin Roger Ramsey and his wife, Nancy Ramsey, defendants below and appellees herein.
Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
 "THE LOWER COURT ERRED IN DETERMINING THAT PLAINTIFF HAD BREACHED THE CONTRACT DUE TO LACK OF COMPLETION IN A REASONABLE TIME AND FAILED TO CONSIDER THE DOCTRINE OF SUBSTANTIAL PERFORMANCE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANTS DID NOT BREACH THE CONTRACT."
THIRD ASSIGNMENT OF ERROR:
"THE LOWER COURT ERRED IN ITS AWARD OF DAMAGES."
On February 1, 1995, the parties signed a contract stating that appellant would construct a house for appellees for $125,000. The contact described the house and specified allowances for kitchen and bath cabinetry, plumbing fixtures, lighting, carpeting, and climate control systems. The parties later agreed on various modifications to the contract.
Appellant began construction in May 1995. During the next year, appellees placed money in a construction account. Appellant drew money from the construction account and paid for the majority of supplies, labor, and materials for the house. By June 1996 appellees had paid a total of $117,000 for the house, but estimated that the house was only sixty to seventy percent complete.
On June 25, 1996, appellees sent appellant a letter ordering appellant to cease all work on the house. Appellant ceased work as ordered. Appellees hired other contractors to finish the house.
On October 21, 1996, appellant filed the instant complaint alleging as follows:
 "1. Whereas on or about February 1, 1995, Plaintiff proposed to build a house on land of Defendant, located at 118 Stafford Drive, Waverly, Ohio 45690, Pike County, for one hundred twenty five thousand dollars ($125,000.00), and Defendant accepted said proposal (exhibit A).
 2. During the construction the parties entered into subsequent oral agreements to modify the original contract, thereby increasing material costs and Defendant's obligation to Plaintiff in the amount of thirteen thousand three hundred eighty-seven dollars and twenty cents ($13,387.20) (exhibit B).
 3. On June 25, 1996 Defendant notified Plaintiff that he was to cease all work relating to said construction. Plaintiff was instructed to remove all personally owned tools, and materials were to remain at the worksite (exhibit C).
 4. The amount due Plaintiff on June 25, 1996 was fifteen thousand two hundred forty seven dollars and twenty cents ($15,247.20).
 5. On July 25, 1996 Plaintiff gave notice of a claim of lien in regard to the unpaid balance on Defendant's property at 118 Stafford Drive, Waverly, Ohio 45690.
 6. As a result of Defendant's breach of contract, Plaintiff has suffered damages in the amount of fifteen thousand two hundred forty seven dollars and twenty cents ($15,247.20)."
Appellant prayed for judgment in the amount of $15,247.20.
On November 22, 1996, appellees filed an answer and counterclaim. In the answer, appellees admitted that they agreed to certain modifications to the contract, but argued that those agreed modifications did not include all the modifications alleged by appellant. In the first claim for relief in their counterclaim, appellees alleged that appellant: (1) failed to construct the house in a timely manner; (2) failed to pay materialmen and subcontractors even though appellees had provided appellant with money for that purpose; (3) failed to reimburse appellees for materials purchased directly by them even though appellant had received money from appellee for those items; and (4) failed to construct in a workmanlike manner the portion of the house that he did complete before June 25, 1996. Appellees further alleged that as a result of appellant's actions, appellees incurred damages in the amount of $22,340.67 and will incur future damages because the house is not yet complete.[1]
When answering appellees' request for admissions, appellant admitted that as of June 25, 1996:
 "8. * * * [he had] been paid a total sum of $117,000 by the Defendants.
* * *
 13. * * * the siding on the Defendants' home was not properly completed or finished.
 14. * * * no interior trim or stairway work was completed in the Defendants' home.
 15. * * * no trim was installed in the Defendants' home.
* * *
 20. * * * no outside concrete had been poured at the Defendants' residence.
* * *
 22. * * * no outside concrete had been poured at the Defendant's residence.
 23. * * * the garage at the Defendants' home had not been completed.
 24. * * * no electric wiring had been installed in the garage at the Defendants' home.
 25. * * * the front porch deck at the Defendants' home had not been completed.
 26. * * * no grading had been done around the Defendants' home.
 27. * * * no interior finished floors had been installed at the Defendants' home and that only sub-flooring was installed."
On February 9-10, 1998, the trial court heard the matter. Appellant testified that appellees' house was the first house he built. He further testified that he broke ground on May 12, 1995 and the house was ninety percent complete on June 25, 1996 when appellees ordered him to cease work. Appellant explained that rainy weather in May and June 1995 delayed foundation work on the house and cold weather the following winter delayed other work on the house. According to appellant, the parties agreed to modifications worth $13,387.
On cross-examination, appellant admitted that during a deposition when asked how much money he budgeted for overhead profit, he testified "I didn't allow any, just if there was any left over that would have made a profit," and during the same deposition when asked if he was hoping to build the home as a break even project appellant answered "yes." On cross-examination at trial appellant further admitted that he used the construction account to make payments on his Bobcat and he withdrew $5,000 from the construction account shortly before he purchased a BMW automobile for himself. Later during the trial, appellant admitted that of the $117,000 he received from appellees for the house construction, he used only $80,000 for labor and materials.
Appellant gave the following testimony on cross-examination concerning his deposition testimony and whether he had made any promises to appellees regarding when the house would be finished:
 "Q. You were under oath at that time. Question: Do you recall giving Mr. and Mrs. Ramsey an estimate when you began construction as to when you thought you would have their home completed? Answer: I think I did. Question: And do you recall what that was? Answer: I believe I told them it would be about seven months or so. Do you now recall that you gave them that estimate?
 A. If that's what I said then, yes. I just didn't recall answering at the time.
 Q. Do you recall when it wasn't done in seven months that you then told them it would be ready by Thanksgiving?
 A. The seven month time period would have been around Thanksgiving.
 Q. Did you then tell them it would be ready by Christmas?
A. I don't recall.
 Q. Do you recall when it wasn't done by Christmas you told them it would be ready by Easter?
A. I don't recall.
 Q. In fact, Mr. Chaney, you didn't complete it by any of those deadlines, did you?
A. No."
Appellant presented several other witnesses. Dale Reed, who worked as a carpenter across the street from the house in question, testified that rain delayed construction of the foundation several weeks in the spring of 1996. Matthew Reed, who worked for appellant, testified that they could have finished the house in six or seven weeks after June 25, 1996. Mark Crabtree, who installed siding on the house, testified that appellant's workmanship on the house was fine. Daniel Taylor, who installed siding on the house with Crabtree, testified that the house was eighty to eighty-five percent complete in June 1996. Scott Trestle, who worked on the house, testified that appellant is a meticulous builder and that appellees were "satisfied with how it was being built."
Appellees presented several witnesses who observed the progress of the construction. Melvia Hunt, a retired teacher who lives near the house, testified that she walks by the house three to four times per day, except on rainy days. During her walks, Hunt observed that there were more days during which no one was working on the house than there were days during which people were working on the house. She noted that lumber on the construction site had been left unprotected from the weather. Hunt testified that her own house in the same neighborhood was built in three months.
Connie Yeager, a home builder, testified that her 3,126 square foot house was built in four months. In Yeager's opinion the house in question should have been built in six months. Additionally, Yeager did not like appellant's "dry stack" method of constructing the foundation without mortar between all the blocks.
David Claytor, a plumber who finished the plumbing work on the house after June 25, 1996, testified by deposition that he found problems with appellant's plumbing work. Some of the hot and cold pipes were reversed, a ninety degree connection was left unsoldered, the kitchen sink drain was roughed in too high for a garbage disposal, and some drain pipes in the basement were not properly tied into the main drain.
Appellee Roger Ramsey testified that as of June 25, 1996, he had paid appellant $117,000 and spent an additional $17,000 on the construction of the house, but the house was only sixty to seventy percent complete and had some construction problems including water leaks in the master closet, shingles blown off the roof, and a telephone wire where a doorbell wire should be located. Appellee Roger Ramsey further testified that he had expected to spend the contract price of $125,000 plus a total of $7,324 for agreed modifications to the house, but instead he spent a total of $171,980 to build the house. He gave detailed testimony concerning the difference between his $7,324 figure for agreed modifications and appellant's $13,387 figure for agreed modifications.
On cross-examination, Appellee Roger Ramsey admitted that he knew a similar house had been constructed for $177,000. Appellee Roger Ramsey explained that the contract price for his house was $52,000 lower than that the $177,000 cost of the similar house because appellant had agreed to construct the house in question at cost in exchange for using the house to showcase his house-building skills.
During his rebuttal case, appellant testified, "Every new home I build comes with a five year guarantee." During cross-examination, appellant testified as follows:
 "Q. Mr. Chaney I understand that you always give a five year guarantee on your homes?
A. Yes.
 Q. How many homes have you constructed besides the Ramsey's?
Q. One other?
A. Is that for your mother?
Q. Yes.
 A. Where does it say in your contract that the Ramsey's home is guaranteed for five years?
 Q. I don't recall if I put that in there or not. * * * "
On March 31, 1998, the trial court entered judgment in favor of appellees in the amount of $39,636.70. Appellant requested the trial court to issue findings of fact and conclusions of law. On May 12, 1998, the trial court adopted findings of fact and conclusions of law. In the findings of fact, the trial court found that appellees had paid appellant $117,000 of the $125,000 contract price, that appellees had authorized modifications worth $7,324, and that appellees had spent a total of $171,980.70 on the house. In the conclusions of law, the trial court concluded that appellees were legally justified in terminating the contract and appellees are entitled to damages in the amount of $39,636.70.
Appellant filed a timely notice of appeal.
All three of appellant's assignments of error address the weight of the evidence. In his first assignment of error, appellant asserts that the trial court erred by determining that he breached the contract. In his second assignment of error, appellant asserts that the trial court erred by determining that appellees did not breach the contract. In his third assignment of error, appellant asserts that the trial court erred by awarding appellees $39,636.70. Because all three assignments of error address the weight of the evidence, we will consider them jointly.
When reviewing evidence presented at trial, an appellate court must not re-weigh the evidence. In C.E. Morris v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus, the Ohio Supreme Court held:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
See, also, Vogel v. Wells (1991), 57 Ohio St.3d 91,566 N.E.2d 154; Ross v. Ross (1980), 64 Ohio St.2d 203, 414 N.E.2d 426. An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276, the court wrote:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
See, also, Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418,674 N.E.2d 1159, 1162 (viewing the demeanor, attitude, and credibility of each witness is something that does not translate well on the written page); Central Motors Corp. v.City of Pepper Pike (1995), 73 Ohio St.3d 581, 584,653 N.E.2d 639, 642 ("If the evidence is susceptible to more than one interpretation, we must give it the interpretation consistent with the trial court's judgment."); Gerijo, Inc. v. City ofFairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536
("We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts.").
In order to prove a breach of contract, the plaintiff must prove the contract's existence, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.Doner v. Snapp (1994), 98 Ohio App.3d 597, 649 N.E.2d 42. A material breach is a breach which violates a term essential to the agreement's purpose. Kersh v. Montgomery Development Ctr.
(1987), 35 Ohio App.3d 61, 519 N.E.2d 665. Mere nominal, trifling, or slight or technical departures, and inadvertencies should be disregarded and should not constitute a breach of contract. Cleveland Neighborhood Health Serv., Inc. v. St.Clair Builders, Inc. (1989), 64 Ohio App.3d 639,582 N.E.2d 640, appeal dismissed (1990), 50 Ohio St.3d 705,553 N.E.2d 692.
Damages for breach of contract are those which are the natural or probable consequence of the breach, or damages resulting from the breach that the parties contemplated at the time they entered into the contract. In a breach of contract action, money damages are designed to place the injured party in the same position it would have been in had the contract terms been satisfied. Schulte Radio Productions, Ltd. v.Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436,453 N.E.2d 683. The usual measure of damages for breach of a construction contract is the reasonable cost of placing the building in the condition contemplated by the parties at the time the parties entered into the contract. Sites v. Moore
(1992), 79 Ohio App.3d 694, 607 N.E.2d 1114; Barton v. Ellis
(1986), 34 Ohio App.3d 251, 518 N.E.2d 18; Jones v. Herchell
(1984), 14 Ohio App.3d 120, 470 N.E.2d 219.
Additionally, we note that when a contract does not explicitly set forth the time for performance, a reasonable time for performance will be inferred. In Koon v. Hoskins (Jan. 24, 1996), Vinton App. No. 95CA497, we wrote:
 "Where the time for performance of a contract is not specifically set forth in a contract, a reasonable time for performance will be inferred. Oil, Chemical Atomic Workers International Union v. Martin Marietta Energy Sys., Inc. (1994), 97 Ohio App.3d 364, 369, 646 N.E.2d 883. A reasonable time is not measured by hours, days, weeks, months or years, but rather is determined by the surrounding conditions and circumstances that the parties contemplated when they executed the contract. Miller v. Bealer (1992), 80 Ohio App.3d 180, 182, 608 N.E.2d 1133. Although in the normal case, a test of reasonable time is the time within the contemplation of the parties in making the contract, it is not the sole and final test; conditions met during performance must be considered in determining reasonable time. 18 Ohio Jurisprudence 3d (1980), 101, Contracts, Section 197. Whether the question of what is a reasonable time is a factual question or a legal question depends upon the nature of the transaction, but it is usually a question for the jury. Id."
In the case sub judice, we find the record contains sufficient competent, credible evidence to support the trial court's judgment that appellant breached the contract, that appellees did not breach the contract, and that appellees suffered damages in the amount of $39,636.70. Appellee Roger Ramsey testified that appellant stated that he would build the house within seven months, but the house was only sixty to seventy percent complete one year later. At trial, appellant did not disagree that during his deposition he admitted telling appellees that he would build the house within seven months. Melvia Hunt testified that during her daily fair-weather walks past the house, she often did not see anyone working on the house. Connie Yeager, a house builder, testified that she thought the house should have been built in six months. The evidence adduced at trial supports the conclusion that appellant failed to complete his contractual obligations within a reasonable time.
Although the parties presented differing testimony with regard to the amount of damages, the record contains sufficient competent, credible evidence to support the trial court's judgment awarding appellees $39,636.70. Appellant admits that Appellee Roger Ramsey paid him a total of $117,000 on the contract. Appellant admits that by June 25, 1996 he had not completed the siding, the interior trim, the stairway work, the outside concrete, the electrical wiring, the front porch deck, the site grading, or the interior floors. Appellee Roger Ramsey testified that he agreed to modifications of the contract worth $7,324, which brought the agreed contract price to $132,324. He further testified that he had to pay a total of $171,980.70 to complete the house. Thus, we find ample evidence in the record to support the trial court's conclusion that appellees' damages total $39,656.70.
We additionally note that in his first assignment of error appellant asserts that the trial court erred by failing to consider the doctrine of substantial performance. Appellant bases this assertion on his testimony that the house was eighty to ninety percent complete at the time appellees terminated the contract, and on his testimony that he had received $117,000 of the $125,000 original contract price at the time appellees terminated the contract. As we discussed above, the trial court chose to believe appellees' version of the evidence rather than appellant's version of the evidence. Appellees' evidence does not support application of the doctrine of substantial compliance. Thus, we find that the trial court did not error by failing to consider the doctrine of substantial performance.
In conclusion, we note that although appellant presented sufficient evidence in support of the allegations contained in his complaint, the trial court chose to believe appellee's version of the facts. As a reviewing court, however, we must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Gerijo, Inc., supra. We are unable to view the witnesses and observe their demeanors, gestures and voice inflections, and we are unable to use these observations in weighing the credibility of the witnesses' testimony. Seasons Coal Co., supra.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 BY: __________________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] This appeal does not involve appellee's unsuccessful second claim for relief. In that claim, appellees alleged that appellant violated Ohio's Consumer Sales Practices Act, R.C.1345.01 through R.C. 1345.13 by: (1) stealing recessed lighting fixtures from the building site after June 26, 1996; (2) writing a bad check for wood flooring installed in the house; and (3) failing to pay contractors and materialmen from money that appellees gave appellant for that purpose.