OPINION
{¶ 1} Plaintiff-appellant, Morton Buildings, Inc. ("Morton"), appeals from a judgment in favor of defendant-appellee, Correct Custom Drywall, Inc. ("CCD"). For the following reasons, we affirm.
 {¶ 2} In early 2002, James Wade, the CEO of CCD, decided to build a large, free-standing garage in which to store his motor home and collection of automobiles. Wade directed his assistant to contact various contractors, including Morton, to solicit proposals. Because Wade wanted the garage completed as soon as possible, he *Page 2 
refused to consider any contractor who could not construct the garage within 90 days. At trial, Wade testified that he told all the contractors about his 90-day time limitation.
 {¶ 3} Thomas Taylor, a Morton sales consultant, drafted and submitted a proposal in which he set forth potential architectural features and product specifications for the garage. This proposal indicated that the "[t]ime frame of construction" would be April 15, 2002 through July 31, 2002.
 {¶ 4} In his trial testimony, Wade claimed that after receiving Morton's proposal, he met with Taylor to provide Taylor with more details about the qualities he wanted in the garage. During the meeting, Wade chose a particular model of garage, as well as certain features and building materials. Taylor then drafted and submitted a second proposal incorporating Wade's choices and provided that construction would occur from late May to late August 2002.
 {¶ 5} On April 26, 2002, the parties executed a contract in which CCD agreed to pay $126,438 for the construction of a 36,000 square-foot garage on Wade's property in Reynoldsburg, Ohio ("City"). The contract did not contain a completion date. However, it did state that July 1, 2002 would be the "approximate delivery date" for the building materials. Also, a third proposal, dated the same day as the contract, provided that construction would begin in late July and end in late August. Wade later testified that he signed the contract because Taylor guaranteed that Morton would complete the garage by September 1, 2002. Taylor, however, denied that he ever guaranteed a particular completion date.
 {¶ 6} Morton's engineering department drafted plans for the garage, which Lawrence Cole, a Morton sales consultant, submitted to the City on July 15, 2002. A little *Page 3 
over two weeks later, the City notified Cole that it had approved the plans with the condition that Morton strengthen the ceiling truss system.
 {¶ 7} Throughout the majority of August and September, the project stalled as Morton redesigned the garage. By early August, Wade became impatient with the delay and questioned Cole about the lack of progress. Cole told Wade of the City's conditional approval, and Wade responded that Cole should "get it done" and "proceed in a hurry."
 {¶ 8} Cole submitted the revised plans to the City on September 21, 2002, and the City approved the plans within two days. Morton delivered the building materials to the site on October 15, 2002. Construction began two days later, and Morton finished erecting the shell of the garage on November 7, 2002.
 {¶ 9} On November 23, 2002, Cole met with the subcontractor to view the plans and to discuss what plumbing, electrical, and heating work the subcontractor needed to complete. By December 5, 2002, the subcontractor had finished trenching for the interior plumbing. However, construction stalled again as the subcontractor awaited the City's inspection of its competed work. Unhappy with this second delay, Wade telephoned Cole on December 18, 2002 seeking an explanation. Cole told Wade that construction could not go forward without the City's approval, and Wade responded that he wanted the subcontractor off the job if it could not complete its work within a reasonable time.
 {¶ 10} On January 8, 2003, the subcontractor returned to the site to work on the garage. Michael Wade, Wade's brother, informed the subcontractor that Morton was no longer on the job and asked the subcontractor to leave.
 {¶ 11} In an attempt to keep the deal together, Morton representatives met with Wade and his brother on February 11, 2003. During that meeting, the participants *Page 4 
discussed the work necessary to complete the contract. In the course of reviewing the state of the garage's unfinished plumbing system, Wade discovered that he would have to spend an additional $30,000 to connect the garage to the City sewer. Further, the Morton representatives told the Wades that a "reasonable time frame for completion" of the garage would be April 15, 2003. For Wade, the additional two months of construction were "absolutely the last straw," and he terminated the contract. At the time of termination, CCD had only paid $50,571 of the total purchase price.
 {¶ 12} On October 28, 2003, Morton filed suit against CCD, asserting claims for breach of contract and unjust enrichment. CCD filed a counterclaim for breach of contract. A bench trial on the parties' claims commenced on May 16, 2006.
 {¶ 13} At trial, Wade, Michael Wade, Taylor, and Cole testified regarding the events set forth above. Additionally, Michael Wade, who works as a general contractor, testified that it would have taken him three to five months to completely construct the garage. Cole testified that Morton could have built the garage within five months under "normal circumstances."
 {¶ 14} On August 15, 2006, the trial court issued a decision and entry in which it rendered a verdict against Morton on its claims and against CCD on its counterclaim. Morton now appeals from that judgment and assigns the following errors:
 1. The trial court erred in ruling that Defendant CCD, despite demanding and accepting performance by Plaintiff Morton Buildings through January 2003, did not waive any defense regarding time of performance.
 2. The trial court erred in ruling that time of performance was an essential term of the contract.
 3. The trial court erred in ruling that Morton Buildings failed to perform within a reasonable time. *Page 5 
 4. The trial court erred in ruling that Morton Buildings cannot recover under a theory of quantum meruit or unjust enrichment.
 5. The trial court erred in ruling that the contract did not contain an integration clause.
 {¶ 15} We will address Morton's assignments of error out of order and begin our review with the third assignment of error. By that assignment of error, Morton argues that because it was performing (and would complete its performance) within a reasonable time, it did not materially breach the contract. Without a material breach, Morton contends, CCD did not have grounds to stop performing, and thus, CCD breached the contract in not making full payment.
 {¶ 16} When a contract does not specify a time for performance and time is not of the essence, the law implies that performance must take place within a reasonable time. Oil, Chem. Atomic Workers Internatl.Union, Loc. Union No. 3-689 v. Martin Marietta Energy Sys. (1994),97 Ohio App.3d 364, 369; 155 N. High Ltd. v. Cincinnati Ins. Co. (1991),75 Ohio App.3d 253, 258. A breach of the implied duty to perform within a reasonable time constitutes a material breach of the contract. 23 Williston, Contracts (4 Ed.2000) 487-488, Section 63:18 ("An unreasonable delay in performance constitutes a material breach."). Consequently, if one party to a contract unreasonably delays its performance, the other party is excused from its contractual obligations. 14 Williston, Contracts (4 Ed.2000) 587-588, Section 43:7 ("[T]here is an implied condition in virtually every contract that performance must occur within a reasonable time, and a breach of this implied condition will excuse further performance by the other party."). See, also, Nious v. Griffin Constr, Inc., Franklin App. No. 03AP-980,2004-Ohio-4103, at ¶ 16 ("[A] *Page 6 
`material' breach entitles a [party] to stop performing, which, in essence, terminates the contract.").
 {¶ 17} A reasonable time for a contract's performance is not measured by hours, days, weeks, months, or years. Chaney v. Ramsey (Apr. 7, 1999), Pike App. No. 98CA614; Stults Assoc, Inc. v. United MobileHomes, Inc. (Oct. 14, 1998), Marion App. No. 9-97-66; Lancaster v.Rahlfs (June 2, 1994), Cuyahoga App. No. 66146. Instead, a fact finder must ascertain whether the time period spent performing is reasonable in light of the parties' original expectations and the circumstances met during performance.
 {¶ 18} Thus, to determine whether a party has breached its implied duty to perform within a reasonable time, a fact finder must first look to the conditions and circumstances surrounding the execution of the contract to see what time period, if any, the parties contemplated for performance. Lewis v. DR Sawmill Sales, Inc., Franklin App. No. 04AP-1096, 2006-Ohio-1297, at ¶ 3; Uvegas v. Storage World, Inc., Medina App. No. 05CA0052-M, 2006-Ohio-924, at ¶ 8; Stone Excavating, Inc. v.Newmark Homes, Inc., Montgomery App. No. 20307, 2004-Ohio-4119, at ¶ 16. The fact finder must also consider any uncontrollable delays encountered during performance. Chaney, supra. Based upon these two factors, the fact finder then must gauge whether the length of time spent performing was reasonable. In sum, whether a party has breached the implied duty to perform within a reasonable time is a matter of comparison, not an exact calculus. It is not the fact finder's purpose to imply an after-the-fact completion date, but rather, to judge the reasonableness of the time expended in performance.
 {¶ 19} In the case at bar, the trial court, acting as fact finder, determined that Morton breached its duty to complete its performance within a reasonable time. When *Page 7 
reviewing this factual determination, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, we must construe it consistently with the trial court's judgment. Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d. 581, 584.
 {¶ 20} Here, the evidence demonstrates that the parties originally contemplated that the garage would be completed approximately three months after they executed the contract. Wade maintained that he insisted upon a 90-day window for construction from the beginning of the proposal process. In Morton's first two proposals, Taylor fixed the time frame for construction at approximately three months. In the last proposal, Taylor indicated that construction would end in late August — about four months from the date of the contract. Further, Wade testified that Taylor guaranteed that Morton would finish the garage by September 1, 2002; again, around four months after the parties signed the contract.
 {¶ 21} In juxtaposition to the parties' original expectations, Morton eventually admitted to Wade that it could not complete the garage until April 15, 2003 — almost an entire year from the date the parties executed the contract. Given the nine-month gap between the three-month time frame the parties first contemplated and the year Morton *Page 8 
actually needed to finish, the trial court concluded that Morton breached its implied obligation to construct the garage in a reasonable time.
 {¶ 22} Morton argues that a year was not an unreasonably long time frame for construction because it needed time to respond to the City's decision to place conditions upon its approval of the garage plans. However, the trial court considered the delay occasioned by the conditional approval and found that the delay did not alter its conclusion that Morton failed to perform in a reasonable time. The trial court reasoned that Morton could have prevented the delay or taken the factors that caused the delay into consideration when determining the length of time for construction. Indisputably, Morton was responsible for drafting the plans so that they met the City's standards and for submitting (and resubmitting) those plans to the City in a timely manner. Moreover, the time lag in Morton's redesign, not the City's period of consideration, caused the majority of the delay.
 {¶ 23} Thus, we conclude that competent, credible evidence supports the trial court's finding that Morton breached its implied duty to perform in a reasonable time. As beach of this implied duty is a material breach of the contract, Morton's unreasonable delay excused CCD from its payment obligation. Accordingly, we overrule Morton's third assignment of error.
 {¶ 24} By Morton's first assignment of error, it argues that even if it materially breached the contract, CCD waived its right to terminate the contract when it demanded that construction of the garage go forward. We disagree.
 {¶ 25} Morton's argument hinges upon its conclusion that the trial court implied a completion date of July 26, 2002. Morton contends that when it did not perform by that *Page 9 
date, CCD had to make an election between terminating the contractor continuing the contract and suing for damages caused by the delay. Because Wade demanded performance after July 26, 2002, Morton believes that CCD forfeited its right to terminate the contract.
 {¶ 26} The trial court, however, never implied an after-the-fact completion deadline. Rather, the trial court found that one year was not a reasonable time in which to finish construction of the garage. Because of the singular nature of the implied duty to perform within a reasonable time, the breach of the duty cannot always be tied to a particular date. Here, without such a date, CCD cannot be expected to have elected to pursue one of its alternative remedies (damages) and voluntarily waive the other (termination). Glidden Co. v. LumbermansMut. Cas. Co., 112 Ohio St.3d 470, 2006-Ohio-6553, at ¶ 49 ("Waiver is a voluntary relinquishment of a known right * * * ."). Thus, in the absence of a definitive date on which Morton's non-performance resulted in a breach, Wade could continue to demand that construction go forward without waiving CCD's right to timely performance or to terminate the contract.
 {¶ 27} Furthermore, the precedent Morton cites does not dictate a different result. That precedent applies when a party has "failed to complete the agreed work by the time fixed in the * * * contract." 14 Williston, Contracts (4 Ed.2000), Section 40:43. See, e.g., Jacobs v.Hawbaker (June 30, 1986), Franklin App. No. 84AP-771 (the plaintiff waived the time requirement of performance by December 31, 1981);Ohio Turnpike Comm. v. Personnel Data Sys., Inc. (Jan. 24, 1985), Cuyahoga App. No. 48412 (the plaintiff waived its right to terminate the contract for the defendant's failure to perform within the 90-day time limit the parties agreed to). Unlike the instant case, the parties in the cited cases *Page 10 
could waive the breach of the time requirement because the point of breach was unambiguous.
 {¶ 28} Accordingly, we overrule Morton's first assignment of error.
 {¶ 29} By Morton's second assignment of error, it argues that CCD must pay the contract price despite Morton's unreasonable delay because the contract did not specify that time was of the essence. We disagree.
 {¶ 30} First, this argument assumes that Morton's untimely performance would only materially breach the contract (and thus excuse CCD from paying) if the contract made time of the essence. This assumption is incorrect. Generally, if time is of the essence in a contract, a delay in performance beyond the specified time will constitute a material breach. Fuschino v. Smith (Jan. 5, 2001), Clark App. No. 2000-CA-31. See, also, 14 Williston, Contracts (4 Ed.2000) 585, Section 43:7. However, as we held above, failure to perform within a reasonable time also amounts to a material breach that discharges CCD's payment obligation. 14 Williston, Contracts (4 Ed.2000) 587-588, Section 43:7. Second, Morton's argument assumes that the trial court ruled that time was of the essence in the parties' contract. Again, this assumption is incorrect. The trial court never addressed whether time was of the essence. Rather, the trial court found that Morton breached its implied obligation to construct the garage within a reasonable time. Accordingly, we overrule Morton's second assignment of error.
 {¶ 31} By Morton's fourth assignment of error, it argues that it is entitled to recover under the doctrines of quantum meruit and unjust enrichment because CCD acted in bad faith. We disagree. *Page 11 
 {¶ 32} In the absence of fraud, illegality, or bad faith, a party to a valid contract is limited to recovering under the contract and cannot seek recovery pursuant to the quasi-contractual doctrines of quantum meruit and/or unjust enrichment. Aultman Hosp. Assn. v. Community Mut.Ins. Co. (1989), 46 Ohio St.3d 51, 55; Donald Harris Law Firm v.Dwight-Killian, 166 Ohio App.3d 786, 2006-Ohio-2347, at ¶ 14;Interstate Gas Supply, Inc. v. Calex Corp., Franklin App. No. 04AP-980,2006-Ohio-638, at ¶ 58. Applying this rule, the trial court rendered a verdict against Morton on its unjust enrichment claim. Morton, however, argues that the trial court erred in so ruling because the bad-faith exception to the rule applies here. Morton claims that CCD acted in bad faith by demanding performance and then not paying for what it received. We find this argument unavailing.
 {¶ 33} While not susceptible to a concrete definition, bad faith:
 [E]mbraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.
Hoskins v. Aenta Life Ins. Co. (1983), 6 Ohio St.3d 272, 276. Given this standard, to succeed on its bad-faith theory, Morton had to prove that Wade lured Morton into building a garage that Wade did not intend to pay for. The evidence, however, does not support even an inference of such dishonesty. Wade's actions demonstrate that, above all, he wanted Morton to finish the garage as soon as possible. He gave Morton numerous opportunities to complete the garage and did not terminate the contract until Morton admitted that construction of the garage would take a full year (or about four times the time period Wade originally expected for construction). Thus, the evidence shows Wade *Page 12 
to be a frustrated customer who only walked away from the deal when it became clear that Morton could not deliver within a reasonable time.
 {¶ 34} Accordingly, as a matter of law, we conclude that Wade did not demonstrate the bad faith necessary to allow Morton to pursue an unjust enrichment claim. Therefore, we overrule Morton's fourth assignment of error.
 {¶ 35} We now turn to Morton's fifth assignment of error, in which Morton states that "[t]he trial court erred in ruling that the contract did not contain an integration clause." Because Morton's brief does not contain any argument supporting this assignment of error, we will not consider it. App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16[A]."). Accordingly, we overrule Morton's fifth assignment of error.
 {¶ 36} For the foregoing reasons, we overrule Morton's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and FRENCH, JJ., concur. *Page 1